Opinion on Rehearing.
Washburn, P. J.
Since the foregoing opinion was prepared and announced, defendants have employed additional counsel, and an application has been made for a rehearing of the case.
Additional briefs have been filed, and the questions involved in the case have received our further consideration, with the result that we adhere to the decision announced.
*385 A rule, which is established by the weight of authority, at least outside of Ohio, is, that the majority faction of an independent or congregational society, whether incorporated or not, however regular its action or procedure may be, cannot, as against a faithful minority, divert the property of the society to another denomination, or to the support of doctrines radically and fundamentally opposed to the characteristic doctrines of the society, even though the property is subject to no express or specific trust.
We make no attempt to collect the authorities which support this rule. Many of them will be found cited in an annotation in 8 A. L. R., at page 113.
We have already found that this was not a congregation strictly independent of other ecclesiastical associations, but that it was organized, dedicated and conducted as a Uniat church, and that differences exist between the' Uniat church and the Orthodox church which are fundamental and characteristic, the Orthodox church being a separate and distinct denomination.
In view of the early decisions in Ohio, in Keyser v. Stansifer, 6 Ohio, 363; Heckman v. Mees, 16 Ohio, 583, and Bartholomew v. Lutheran Congregation, 35 Ohio St., 567, it is not our purpose to hold that this rule is operative in Ohio to the full extent as stated above, but we do hold that when the change attempted by a majority of such a religious organization is not a mere change as to government or polity, but is an avowed change of denominational relations, and amounts to an attempt *386 to turn over the property to another separate and distinct denomination, and thus work an abandonment of the original purpose of the society, the minority has the right to the assistance of a court of equity to prevent such change being made.
If the congregation in question was organized as a Uniat church, and the property was dedicated as such, and up to 1918 was governed and conducted as a Uniat church, then it differed fundamentally from the Orthodox church, for the former acknowledges the primacy and supremacy of the Roman pontiff, which the Orthodox church denies, and came into being for the express purpose of denying.
The record discloses not only a solemn declaration by the defendants, made at the time the change was attempted, that the organization was then Uniat, but an avowed purpose to change denominational relations from “Uniat slavery” to “Orthodox authority,” for the official minutes of the meeting, prepared by the defendants, at which the change was made, record that it was resolved that “the members of the congregation unisono decide not to be from today on under the Uniat slavery, and submit themself to the Orthodox authority. To the Uhro-Russian Orthodox Greek Catholic Bishop, Stephen, and give power to the rector, Rev. Joseph J. Takach, and to the trustees of the Congregation to make all the necessary things which are wanted by the Church authority, the Uhro-Russian Orthodox Diocese, with Bishop Stephen at the head of it*
A church, founded upon the recognition of the ¡primacy and supremacy of the Roman pontiff, can *387 not be classed as a church strictly independent, having a merely voluntary ecclesiastical connection which may be changed by a majority of the congregation.
The priest who organized this church was ordained by a Roman Catholic bishop. The church was dedicated under the auspices of a Roman Catholic bishop. The church, from the beginning, was under the jurisdiction of a Roman Catholic bishop, to the extent that no priest, until the present one, was allowed to officiate without the sanction of a Roman Catholic bishop.
The acknowledgment of the primacy and supremacy of the Roman pontiff was the chief, fundamental characteristic which distinguished the church from the Orthodox church, which is now, by the consent of the majority of the congregation, in the possession and control of the property,. because the majority have changed, so that they now deny, instead of acknowledge, the primacy and supremacy of the Roman pontiff. Such a change is not merely a change of synodical relations, as was permitted in Bartholomew v. Lutheran Congregation, 35 Ohio St., 567, but is rather a change of the very basis of the church — a change which destroys the church as a Uniat church, and makes it into a church of a different and antagonistic denomination.
Neither is it a mere change of creed by a strictly independent church, as, in Keyser v. Stansifer, 6 Ohio, 363, was permitted to be made by a majority of the members of the Baptist church, which was, “in itself a whole, separate and independent; *388 at liberty to form its own creed, and looking to others for counsel and social intercourse only.”
Such strictly independent Greek Catholic Churches there may be, but if a Greek Catholic church is Uniat, it is not strictly independent — it belongs to a system or organized whole —• the great Roman Catholic denomination, founded upon the supremacy and infallibility of the pope, in which organization the pope has bishops especially appointed to exercise his jurisdicton over Uniats.
It has been suggested that plaintiffs are estopped from prosecuting this suit and insisting upon the execution of the trust, because they delayed for some time to object to the change being made. It may be that one of the plaintiffs is so estopped, because he was present at the meeting when the change was made, and signed the paper consenting to the call of Rev. Takach, but we do not think that because one of the other plaintiffs attended church thereafter, and another refused to attend church after the change was made but delayed the bringing of this suit for about a year after the change was made, they are estopped from prosecuting the suit.
Our secretary has called our attention to a case decided by this court while sitting in Summit county, in May, 1916, which fully supports and sustains the decision we have reached upon the main questions involved, but. the question of res adjudicata was apparently not raised in that case, although the opinion in that case discloses that the change from Uniat to Orthodox had been made for some time, and that a part of the property involved was acquired by the congregation after such change *389 was made. The case is that of Zofchok, etc., v. Archbishop Platon et al., No. 153.
A decree may be entered in accordance with our original opinion.
Vickery and Ingersoll, JJ., concur in decree.